[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO IMPLEAD OR IN THE ALTERNATIVE MOTION TO JOIN INTERESTED PARTY
In this case, the Commission on Human Rights and Opportunities (CHRO) ex rel Thomas Rowley alleges that Mr. Rowley filed a complaint with the CHRO that the defendants "discriminated in the terms and conditions of sale based on the familial status of the prospective buyer of his mobile home by refusing to approve the sale (of the home) in violation of the state, (§ 46a-64c (a)(2), (a)(3)) and federal (Title VIII of the CT Page 6836 Fair Housing Act of 1968) acts concerned with prevention of discrimination in the sale of housing."
The defendants filed a motion for summary judgement in which they relied "in part on the Town of Groton's zoning regulations and building code provisions enforced by the Town in taking the action complained of by the plaintiff" The court deified that motion and the defendants have now filed a motion to "implead or in the alternative (a) motion to join (an) interested party."
The motion to implead is made pursuant to § 52-102a of the General Statutes and Practice Book § 10-11. The defendants claim in their motion that the town "is or may be liable for all or part of the plaintiffs claim" and further state the "defendants" liability to plaintiff depends on the propriety and enforceability of (the town's) zoning and building code provisions.
The motion for joinder is made pursuant to § 52-102 of the General Statutes and Practice Book § 9-6. The defendants maintain that the town is a necessary or an interested party. They refer to the fact that a motion for summary judgment has been filed and special defenses raised based in part in reliance on the previously mentioned town regulations. The defendants argue these "regulations define `single-family' in such a way that the plaintiffs prospective buyers could not lawfully reside in the single-family mobile home unless the Town's regulations are void and of no effect. This is an issue in this action, and the participation of the town is necessary to make a determination."
They note the court decided the summary judgment against the defendants holding the town regulation was not "reasonable." Local regulations are exempt from operation of the state and federal fair housing acts only if they are found to be "reasonable" as that term is defined in those acts and the cases interpreting the legislation.
The defendants argue that the court "suggested that a private party violate the town's regulation and defend against the town's enforcement action. The Town of Groton has an interest in whether the local court will enforce or invalidate its zoning regulations."
The plaintiff opposes both the motion to implead and the motion for joinder which have been combined into one motion.
 (1)
Given the facts and legal claims here, should a motion to implead the town be granted under Practice Book § 10-11? CT Page 6837
Our rule, based on § 52-102a, is modeled on Rule 14(a) of the Federal Rules of Civil Procedure. That rule, like ours, was created to obviate multiplicity of actions, Schurgast v. Schurgast, 156 Conn. 471,484 (1968). As said in Senior v. Hope, 156 Conn. 92, 96 (1968): "As in the case of Rule 14(a), when § 52-102a permits the impleading of one who `is or may be liable' for the claim sued on, the purpose and effect of the quoted words is to accelerate the accrual of the right to assert a claim against the impleaded person."
It is also true that, as stated in Horton and Knox at Volume 1 ofConnecticut Practice, "Since Connecticut does not recognize the concept of contribution among joint tortfeasors, one tortfeasor generally cannot implead another. . . . The third party complaint must allege that the third party defendant is liable to the third party plaintiff, not to the original plaintiff, Commissioner v. Lake Phipps Land Owners Corp.,3 Conn. App. 100 (1985)," id. p. 339.
Two basic principles must be kept in mind when analyzing attempts to implead other parties by the defendants. The purpose of the practice is to prevent multiplicity of actions. The reason why this is a problem is succinctly stated in 59 Am.Jur.2d § 192 at p. 697 in the article on "Parties."
 "In the absence of statute or rule, when one is sued in respect to an obligation or other right for which a third person is liable over to him, he may conclude such third person by the judgment rendered against him in the action, and save himself from proving his claim against such third person by independent evidence vouching in the person, that is, by notifying such person of the pendency of the suit and such a remedy is incomplete. If the person liable over does not come in and defend and does not relieve the defendant of the burden of the judgment against him the original defendant is still bound to enforce his rights against such third person in an independent action."
Impleader practice was really meant to correct this problem therefore: "A third person may not be added as a third-party defendant where it is not shown that he or she is or may be liable over to the defendant on the plaintiffs claim. A defendant can bring in a third party defendant only for the purpose of passing through to the third party defendant all or part of the liability that might be imposed on the defendant by the plaintiff as the result of the conduct of the third party defendant," id. at § 195, pp. 705-706. This has to be the case since how is CT Page 6838 multiplicity of actions a problem in scenarios where the defendant does not have a pass through or contingent claim against another party as a result of the suit against the defendant? This principle is accepted in the federal courts under federal impleader practice, Rule 14(a). U.S.General, Inc. v. Joliet, 598 F.2d 1050, 1053 (CA., 7, 1979), and in states permitting impleader by defendants, see Valley Landscape Co. v.Rolland, 237 S.E.2d 120, 124 (Va., 1977); Buttermark v. Korber, Inc., etal, 409 N.Y.S.2d 251, 252 (1978).
A corollary and necessary result of this limitation on impleader practice supports another important principle — a plaintiff has a right to choose the party it wishes to sue, Hills v. Price, 79 F. Sup. 494
(E.D.S.C., 1948). Thus, in those jurisdictions that follow, "the common law and do not recognize a right of contribution between joint tortfeasors, impleader for contribution will not be allowed," FederalPractice and Procedure, Wright, Miller, Kane, Vol. 6, § 1448, p. 389. Commenting on an earlier version of federal rule 14, Wright at § 1446, pp. 379-380, said:
 "Prior to the 1948 amendment to Rule 14(a), the rule permitted the impleader of a third party who was liable `to the plaintiff' This provision was deleted because an unwilling plaintiff could not be required to amend the complaint to state a claim directly against a third party so that on many occasions impleader amounted to an offer of a new party to the original plaintiff that could prove to be futile and time consuming if plaintiff rejected the tender. Under the rule as amended, a judgment against the third-party defendant must inure to the benefit of the third-party plaintiff, and not the original plaintiff; defendant no longer may implead someone who is solely liable to the plaintiff.
Connecticut impleader practice follows the later revision of Rule 14. Thus, even if a town could be held liable to a party discriminated against under the Fair Housing Act (see definition of "person" in §46a-51 and language of § 46a-82 and § 46a-100), that would not provide a reason to permit defendants such as these to implead the town.
In any event, it is clear from reading the actual third party complaint and not the characterizations given to it in the motion that there is no basis for impleader. The defendants do not claim, nor can they, that if they are held liable to the plaintiffs they have a right to bring an indemnification action against the town. The defendants may be able to assert some variation of a "good faith" defense, permitted for example, CT Page 6839 in § 1983 actions, based on the notion that they were only complying with local regulations that they could assume would be enforced against them. cf. Richardson v. McKnight, 521 U.S. 399 (1997), see also two variations of this "defense" in Jordan v. Fox, Rothschild, O'Brien Frankel, 20 F.3d 1250 (CA. 3, 1994), and Wyatt v. Cole, 994 F.2d 1113
(CA., 5, 1993). But this is only a possible defense (which the court is not now deciding on) in the main action of the plaintiff It does not give a substantive right against the town for any liability in the plaintiffs action which is a prerequisite for impleader — impleader practice is a procedural device to allow substantive claims against third parties to be litigated in one action, it does not itself create substantive rights.
The court denies the motion to implead the town under Practice Book § 10-11.
 2.
The defendants do not rely solely on impleader to bring the town into this action. They also, as noted, move "pursuant to Connecticut General Statutes § 52-102 and Practice Book § 9-6" to join the town because it is "an interested or necessary party." Moller and Knox in their commentary to Practice Book § 9-6 point out that "[t]his section concerns only parties that the plaintiff can join as defendants in the original complaint. Adding defendants after the action is brought is governed by §§ 9-18 to 9-22," Connecticut Practice, Vol. 1, p. 301.
Commenting on the last mentioned rules, Moller and Knox in their commentary to § 9-18 go onto state at pp. 310-311:
 "The recent tendency of the Supreme Court is to ignore the specific embarrassing language of these sections and follow the most analogous Federal Rule. To understand (Section 9-18) and Practice Book § 9-19, one should divide the universe into four groups for the purpose of any lawsuit.
 (1) Those who must be parties to the action or no judgment can enter (cf. Federal Rule 19(b)).
 (2) Those who ought to be (or have a right to be) parties to the action, but judgment can enter without them (cf. Federal Rule 19(a)).
 (3) Those who may be but have no right to be parties CT Page 6840 to the action (cf. Federal Rule 20).
(4) Those who must not be parties to the action.
This court agrees with the commentary insofar as it suggests that the federal rules can be resorted to for guidance in this area as our court has explicitly done, see Horton v. Meskill, 187 Conn. 187, 192 (1982).
Beyond that, joinder problems can be simplified if, in analyzing them, one works from the actual language of Rule 19 as a guide for our practice and concentrates on the practical issues presented rather than a scholastic analysis of what is meant by "indispensable parties" as opposed to "necessary parties" or "proper parties" in the abstract.
The relevant portion of Rule 19 reads as follows:
 "A person . . . shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.
...
 (b) Determination by Court Whenever Joinder Not Feasible. If a person as described in subdivision (a) (1) — (2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the CT Page 6841 plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. . . ."
As noted in Federal Practice and Procedure, Wright, Miller, Kane, § 1604, Vol. 7, p. 35, . . . "the necessary party label has been eliminated to emphasize that the real purpose of this rule is to bring before the court all persons whose joinder would be desirable for a just adjudication of the action and the term `indispensable' is used in Rule 19(b) only in a conclusory sense." In other words, our practice should reflect the purpose sought to be achieved by the federal rule and under that rule . . . "pragmatical are to be the solvents of joinder problems, replacing former rigid terminological descriptions of the parties."Broussard v. Columbia Gulf Transmission Co. 398 F.2d 885, 888 (CA. 5, 1968).
 (a)
It is certainly true that a party must be joined if in its "absence complete relief cannot be accorded among those already parties." This is a consideration for both state and federal joinder practice. As noted in Wright, this Rule 19a (1) language "is designed to protect those who are already parties," § 1604, p. 41. Also, a court must join such parties if it is to not waste its time in adjudicating matters that will provide no actual relief to the parties before it. For example, in Associated DryGoods Corp. v. Towers Financial Corp., 920 F.2d 1121 (CA. 2, 1990), it was held that a landlord had to be included in the litigation if complete relief were to be granted in a case where a tenant brought suit against a subtenant for rent. The tenant could not increase the electrical capacity supplied to subleased floors, as the subtenant sought in its counterclaim, without the landlord's consent, id. 1124.[1]
The conclusory determination of indispensability under Rule 19(b) is involved with problems presented by the need for diversity jurisdiction. Strictly speaking, the town here "can" be brought into the action. But it cannot be said that the action should not be allowed to go forward without its presence in the sense that in its absence complete relief cannot be afforded to the parties now before the court. That is, between the parties themselves complete relief can be awarded — the plaintiffs' claims can be fully litigated; the defendants can argue that the court was wrong in its conclusions concerning the legality of the town's regulations in light of the state and federal fair housing acts as filtered through the Supremacy Clause and the fact that municipalities are creatures of the state. The relief awarded the plaintiffs, if they prevail, will not directly be against the town and the plaintiffs do not seek affirmative relief against the town or its regulations. There is no inability to grant "complete relief" to the parties now before the CT Page 6842 court, so the town need not be joined for that purpose.
 (b)
The real issue presented by joinder in this case is suggested by some of the language in Practice Book § 9-18 — can the court determine the controversy "without prejudice to the rights of others," a phrase too broad to be of much practical guidance. or does the town have "an interest which the judgment will affect"? Rule 19a (a)(2) perhaps puts it more exactly when it says a person "shall be joined as a party in the action if (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest."
The first factor that should be considered on the necessity or obligation to join the town in this litigation is the desire of the town to do so as expressed by its actions or failures to act in this regard. As indicated, the joinder issues raised here do not go to subject matter jurisdiction. In its motion for summary judgment, the defendants submitted an affidavit from a town zoning official which stated the defendants' actions were in compliance with town regulations. It would appear then that the town is very well aware of this litigation but has taken no steps itself to intervene nor even expressed an interest in doing so. The court will discuss cases dealing with this factor. InAltman v. Republic of Austria, 142 F. Sup.2d 1187 (C.D. Cal., 2001), the court said:
 "When persons are aware of an action but choose not to claim an interest by failing to join in the action, they are not considered necessary parties. United States v. Bowen, 172 F.3d 682, 689 (9th Ar., 1999) (holding that the district court did not err by finding that a party who was aware of an action but chose not to claim an interest was not a necessary party under Rule 19)," id. p. 1212.
In U.S. v. San Juan Bay Marina, 239 F.3d 400 (1st Cir., 2001), the federal government brought an action against private parties who had constructed new piers without securing prior approval under the Rivers and Harbors Act. The Commonwealth of Puerto Rico leased the property on which the work was done to the defendants, but the Court of Appeals held the Commonwealth was not a necessary party under Rule 19(a)(2) and one of the grounds for the decision was "that the Commonwealth, well aware of this situation, never moved to intervene and so it is apparently of the view that its interests either were not at stake or were aligned with CT Page 6843 those of the United States. . . . Since its decision to forego intervention indicates that the Commonwealth does not deem its own interests substantially threatened by the litigation, the court should not second guess this determination, at least absent special circumstances . . .", id. pp. 406-407.
In McCowen v. Jamieson. et al, 724 F.2d 1421 (CA 9, 1984), a class action was brought against state officials responsible for administering the food coupon program in Arizona. One of the claims involved replacement of lost coupons and an injunction was sought against a state agency seeking to restrain it from continuing to refuse to promptly reissue lost coupons. During the pendency of the litigation, the Food and Nutrition Service (FNS) of the federal agriculture department granted the state a fifteen-day waiver for issuance of lost coupons. The district court then issued an order that required coupons to be replaced within ten days — in effect, violative of the FNS rule. The Court of Appeals vacated the trial court's order holding under Rule 19 that the federal Secretary of Agriculture was a necessary party and indeed indispensable. The court reasoned that the secretary had a substantial interest in defending the integrity of its regulations. Holding the regulations of the FNS inoperative "necessarily constrains the future options of the secretary," id. 1424.
Frankly, the dissent of Judge Duniway is quite convincing; at p. 1425, he says: . . . "we must presume that FNS has been afforded notice and an opportunity to participate. Neither it nor the United States nor any federal official is knocking at the door. Under these circumstances, I see no reason for us to require the trial court to open the door to go out and look for federal agencies or officials and invite them in."[2]
The McCowen court referred to Boles v. Greeneville Housing Authority,468 F.2d 476 (CA 6, 1972), to support its decision but read closely that case does not answer the observation made by Judge Duniway in dissent. In Boles, an action for declaratory and injunctive relief was filed as to a partially completed urban renewal project. The district court found in favor of the defendant Housing Authority. On appeal the plaintiffs attacked the renewal plan proposed by the defendant and approved by the Federal Department of Housing and Urban Development (HUD).
The court does go on to underline HUD's interest in the integrity of its rules and policies and waxes eloquent about being "must hesitant to set the precedent of allowing the policies and practices of HUD or any other federal agency to be overhauled by the judiciary without at least affording the agency the opportunity to be heard in support of its present operation," id. p. 479. But the court noted at what it must be emphasized is the appellate level that "Rule 19 was neither litigated at the trial level nor briefed on appeal," id. p. 479 and in footnote 4 on CT Page 6844 the same page said it was not hesitant to raise the indispensable party question on its own motion in order to protect an absent party "who of course had no opportunity to plead and prove [its] interest below."
That is not the case here. For the reason indicated the court can fairly presume the town was aware of the litigation at least at the time the defendants' summary judgment motion was filed. The propriety of the town's regulations was fairly extensively explored in that proceeding. It ill behooves the town or those purporting to refer to its interests to now claim it should be brought into the litigation after an unfavorable result on the question of its regulations was rendered.
In fact, from a practical point of view and on the strict joinder issue, it is difficult to see how the town can be a party to this litigation in any meaningful sense or why it is necessary to let the town in the protect its interests. The court has already decided the town regulations are not reasonable under the state. and federal fair housing acts. That is the law of the case. Why should the town be let in at this point — to file a motion to reargue? Its purported interest in defending the legality of its ordinances can at this point be advanced at the appellate level, if the plaintiffs are successful at trial. Practice Book § 67-7 provides that the town could request permission to file an amicus brief If it were to seek such permission it must "concisely state the nature of [its] interest and the reasons why a brief of an amicus curiae should be allowed."[3]
Also this is not a case where broad declaratory or injunctive relief is being sought by the plaintiffs which explicitly asks the court to declare a government regulation or a town ordinance illegal or unconstitutional and which might restrict the town's or government's ability to enforce its regulation or ordinance in other cases or situations not before the court, cf. Avonside, Inc., et al v. Zoning Planning Commission,153 Conn. 232 (1965); Troy Towers Tenants Association v. Botti, 94 FRD 37
(D.N.J., 1981); Brandt v. Zoning Board, 393 N.Y.S.2d 264, 266 (1977);McCowen v. Jamieson, supra. Nor is it even a case where wide ranging and detailed regulations are involved, underlining strong governmental interest in the subject, McCowen v. Jamieson, supra; Boles v. GreenvilleHousing Authority, supra. The town regulations, in fact, were raised in defense to the specific claims of relief made in their suit by the plaintiffs against these defendants.
Furthermore, there is no suggestion or indication that to defend its ordinances and regulations the town would have had in the past or has any interest now in establishing some type of factual record which would somehow permit this court to reconsider its views on the regulations or would allow an appellate court to conclude that this court erred in CT Page 6845 concluding the town ordinances were not reasonable and thus did not bar the applicability of the fair housing act's proscription against family composition restrictions.
Another factor must be discussed and, in fact, some of the foregoing observations are related to the adequacy of representation issue discussed in federal joinder cases. Some federal courts will not provide for compulsory joinder if the absentee is already receiving "adequate representation." Here, the defendants have made and will make the same arguments regarding these regulations and their legality as the town would present if it were to be allowed into the litigation see Moore's Federal Practice, at § 19.03 (30, pp. 19-56, et seq. In Washingtonv. Daley, 173 F.3d 1158, 1167 (CA 9, 1999), the court said: "As a practical matter, an absent party's ability to protect its interest will not be impaired by its absence from the suit when its interests will be adequately represented by existing parties to the suit." In Altman v.Republic of Austria, the court notes that: "The "impair or impede" clause of Rule 19(a)(2)(i) focuses on protecting the interest of absent parties. Absent parties are not necessary parties if their interests are adequately represented by existing parties," 142 F. Supp. at p. 1212.
In jurisdictions that factor in adequacy of representation into the initial consideration as to whether fairness requires that a party should be let in to protect its interests, Moore notes that one thing taken into account is "whether the absent party would offer any necessary elements to the proceedings that the present parties would neglect," id. p. 19-56.1. As just discussed, this cannot be said to be the case here.
Finally, the court would note that much of the defendants' motive, if not premise to its arguments for impleader and joinder, are based on the notion that the court has decided that there is some kind of strict liability under the fair housing acts if town regulations "required" them to reject the application of Mr. Rowley to sell his lot. Leaving aside the issue of whether the defendants, in fact, relied on the town regulations in making their decision, as indicated, the court did not mean to necessarily exclude the possibility of a "good faith" defense to these actions. See discussion by way of analogy at 15 Am.Jur.2d § 130 referring to § 1983 actions and case of Wyatt v. Cole, 994 F.2d 1113
(CA 5, 1993), cf. Robinson v. City of San Bernardino, 992 F. Sup. 1198
(C.D. Cal, 1998): The court is certainly not deciding such a defense exists but if such a defense were to be appropriate it would be difficult to see how the presence of the town in this action is particularly necessary at this point in the litigation.
In any event, the defendants' motion for impleader/joinder is denied. CT Page 6846
 ___________________ Corradino, J.